UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CASE NO.: 05-CV-10070/MOORE/GARBER

**NIGHT BOX FILED**

APR 1 2 2006

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

MARKEL AMERICAN INSURANCE
COMPANY,

      Plaintiff,

vs.

ROBERT STOKY, RUTH STOKY,
SCOTT STOKY, and MARLENA AVERY,

      Defendants.
_____/

## MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF

COME NOW, the Defendants, ROBERT, RUTH and SCOTT STOKY, and file this Motion for Summary Judgment and in support thereof state as follows:

### FACTS

The facts of this case are not in dispute, are correctly stated in the Complaint and Answer, and are admitted by the Defendants. The only issue is whether the policy's coverage exclusion for "illegal acts" is valid as a matter of law. The facts are summarized as follows:

    a.    Markel American Insurance Company ("Markel") issued a marine insurance policy for Robert and Ruth Stoky's 1999 Backcountry power vessel. The policy provided liability coverage in the amount of $1,000,000. Their adult son, Scott Stoky, was a named insured on the policy.

**FORD, DEAN & MALLARD, P.A.**
TWO DATRAN CENTER, PENTHOUSE I-C • 9130 SOUTH DADELAND BOULEVARD • MIAMI, FLORIDA 33156 • TELEPHONE (305) 670-2000 • TOLL FREE (888) 372-2873

b. On July 18, 2004 Markel's policy was in full force and effect when Scott Stoky was operating said vessel in Florida Bay with the consent of his parents, Robert and Ruth Stoky.

c. Co-Defendant, Marlena Avery, was a passenger in the insured vessel during the day of July 18, 2004 with Scott Stoky. During the day in question alcohol was consumed by all individuals on the vessel, while they had lunch at the "sand bar" and visited several restaurants and bars. In the afternoon, on the way back to Robert and Ruth Stoky's home, the operator of the vessel lost control and the skiff ran into the mangroves ejecting both Marlena Avery and Scott Stoky causing serious injuries to Marlena Avery. No civil court complaint has been filed to date.

d. For the purposes of this Motion it may be assumed that Scott Stoky was operating the vessel at the time it crashed into the mangroves, though that fact is not admitted.

e. At the hospital, Scott Stoky was found to have a blood alcohol level of .198 and was charged with boating under the influence.

f. Marlena Avery has made a personal injury claim against Robert, Ruth and Scott Stoky for damages she sustained allegedly as a result of the negligence of Scott Stoky. Said claims were forwarded to Markel in a timely fashion by the Stokys.

g. Markel has denied coverage under its marine insurance policy on the basis that Scott Stoky was "legally intoxicated while operating the 1999 20 ft. Backcountry power vessel insured under the terms of Plaintiff's Policy No. 2803202 at the time of the incident on July 18, 2004."

-2-

**FORD, DEAN & MALLARD**, P.A.
TWO DATRAN CENTER, PENTHOUSE 1-C • 9130 SOUTH DADELAND BOULEVARD • MIAMI, FLORIDA 33156 • TELEPHONE (305) 670-2000 • TOLL FREE (888) 372-2873

  h.  Market has denied coverage on the basis that its policy contains the following exclusionary clause:

> 5. Dishonesty or illegal acts:
>
> We do not pay for loss or damages caused by the dishonest or illegal act of any Insured person, any person to whom your insured property is entrusted, or their employees or representatives, regardless of whether or not such person is convicted of such act by criminal court.

  i.  The sole issue for the Court to resolve is whether the "illegal acts" exclusion in Markel's insurance policy effectively voids coverage for an individual who negligently operates a vessel with a blood alcohol level in excess of the legal limit of 0.08 as described in Florida Statute § 375.35.

  j.  This issue is totally a question of law which is appropriate for resolution at the Summary Judgment level.

## MEMO OF LAW

It is well settled that a summary judgment should be granted when there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), <u>Celotex Corp. v. Catrett</u>, 477 US 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

This is a case of first impression in Florida. In fact, no cases have been found in any jurisdiction which have considered an exclusionary clause with this verbiage in a marine policy.

The only case in Florida that involved an exclusion of coverage due to alcohol consumption was found to be invalid. In <u>Blue Cross and Blue Shield of Florida, Inc. v. Steck</u>, 778 So. 2d 374 (2nd DCA 2001), a health insurance policy had a clause stating: "this contract

does not provide benefits for a condition resulting from you being drunk..." The insured was hit by a car while attempting to cross a busy street with a blood alcohol level more than three times the legal limit. The trial court granted Steck's Motion for Summary Judgment and it was upheld on appeal citing <u>Mason v. Life Casualty Insurance Co. of Tenn.</u>, 41 So. 2d 153 (Fla. 1949).

In support of its reasoning to uphold coverage, the Second District cited the standard legal rules: (1) the burden is on the insurer to show that the use of intoxicants by the assured was voluntary and that it was the direct cause of death (damages); (2) the language of insurance policy must be construed liberally in favor of the insured and strictly against the insurer who prepared the policy; and (3) exclusionary clauses must be construed more strictly than coverage issues. *Steck*, supra at 374.

In a concurring opinion, Justice Allenbernd stated his views on the public policy issues involved in such exclusions:

> "I fully concur in this opinion, but do not wish to leave insurance companies with the impression that a different outcome would be guaranteed if the exclusion contained the phrase "direct or indirect, wholly or partially." Section 627.629, Florida Statutes (2000), permits an insurance company to include the following exclusion in a health insurance contract:
>
> Intoxicants and Narcotics: The insurer will not be liable for any loss resulting from the insured being drunk or under the influence of any narcotic unless taken on the advice of a physician.
>
> I am inclined to believe that *Mason I* and *Mason II* limit such an exclusion, as explained in the majority opinion, to direct injuries. Without clearer legislative intent, I question whether a health insurance or life insurance policy that is marketed to the general public should contain an exclusion for direct injuries occurring when the insured is "drunk."

-4-

> A person is "drunk" when operating a motor vehicle if he or she has a blood alcohol level of .08 gram per alcohol per 100 millimeters of blood. *See* § 627.736(2), Fla. Stat. (2000). When the no-fault laws were first enacted, the legislature did permit an alcohol exclusion in a PIP policy if the circumstances involved a conviction for DUI. *See* ch. 71-252, §7, Laws of Fla. *See also Travelers Indem. Co. of Am. v. McInroy*, 342 So. 2d 842 (Fla. 1st DCA 1977). Experience with that exlusion caused the legislature to withdraw its authorization in 1982. *See* ch. 82-243, § 554, Laws of Fla.
>
> If the legislature does not permit an indirect alcohol **exclusion** in a PIP policy, even though **DUI** is a crime, <u>**I question whether such an exclusion is or should be permissible in other types of health, life, and accident insurance.**</u> It is completely lawful for people to consume alcoholic beverages in the privacy of their home or at a social gathering. I am not convinced that the legislature intended section 627.629 to allow insurance companies to deny health insurance benefits to an insured merely because the insured had a blood alcohol level in excess of .08 at the time of an accident unrelated to an automobile. I am not convinced that parents should have no health coverage for a teenager who sustains bodily injuries while experimenting with alcohol.
>
> It is possible that insurance companies should be allowed to market policies with an indirect alcohol exclusion-at a lower premium-to insureds who abstain from alcohol. However, to place this exclusion into a typical health insurance policy would create more problems than it would solve. (Emphasis added.)

The exclusion in the policy in this case is ambiguous to such a degree that it would void coverage in an absurd number of situations and would allow the insurance company to be judge and jury of the "illegality" of the act since no "conviction" would be necessary. For example, under the exclusion, coverage would disappear when the vessel's operator consumed the beverage that raised his blood alcohol level from .07 to .09. It would void coverage if the operator was going too fast in a manatee protection zone, or if he was taking a shortcut home because he had undersized lobster in his boat, or going too fast for sea conditions, or operating

-5-

outside of a navigational marker. Responsible people purchase liability insurance coverage to protect themselves and innocent victims of their own poor judgment and negligence. Marine insurance policies such as the one involved in this case are designed to cover the reckless or careless operation of a vessel and that is what the bulk of the policy purports to do. A layperson reading the "illegal acts" exclusion would naturally assume that it was limited to excluding only intentional use of the vessel while perpetrating a crime. Auto insurance universally covers drivers who have a blood alcohol level above .08. There is no reason for a layperson to assume that Markel's marine policy would be any different.

<u>Florida Statute §327.33.  Reckless or careless operation of a vessel</u> states as follows:

1) It is unlawful to operate a vessel in a reckless manner....Any person who violates a provision of this subsection commits a misdemeanor of the first degree....

2) Any person operating a vessel upon the waters of this state shall operate the vessel in a reasonably prudent manner....

3)(a) A person whose violation of the navigation rules results in a boating accident, but whose violation did not constitute reckless operation of a vessel, is guilty of a misdemeanor of the second degree....

Virtually any boating accident results from negligence on the part of at least one driver and a violation of some navigation rule. A misdemeanor is an "illegal act" if the insurance company deems it to be so, and hence it would be entitled to deny coverage for every boating accident involving its insured. If this exclusionary clause were in an automobile policy, there would be no coverage for an accident in which the insured operator was speeding, or ran a red light or even a stop sign which are in fact "illegal acts." Exclusion of such a wide range of negligently caused losses would leave so few, if any, claims covered that it would defeat the

-6-

**FORD, DEAN & MALLARD, P.A.**
TWO DATRAN CENTER, PENTHOUSE I-C • 9130 SOUTH DADELAND BOULEVARD • MIAMI, FLORIDA 33156 • TELEPHONE (305) 670-2000 • TOLL FREE (888) 372-2873

whole purpose of purchasing liability insurance and would be against Florida's well founded public policy favoring compensation of innocent victims of an insured's unintentional yet negligent acts.

In <u>Fayad v. Clarendon National Insurance Company</u>, 899 So. 2d 1082 (Fla. 2005), the Florida Supreme Court held that unless the policy expressly excludes a loss from coverage, an "all risk" policy provides coverage for all fortuitous loss or damage other than that resulting from willful misconduct or fraudulent acts and stated as follows:

> In deciding whether an all-risk policy excludes coverage for an insured's claimed damages, we are guided by well-established principles of insurance contract interpretation. We begin with the guiding principle that insurance contracts are construed in accordance with "the plain language of the polic[y] as bargained for by the parties." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 33 (Fla. 2000) (quoting *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993)) (alteration in original). However, if the salient policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage, the policy is considered ambiguous. *See Anderson*, 756 So. 2d at 34; *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). Ambiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured. *See Anderson*, 756 So. 2d at 34; *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998); *Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998). Further, ambiguous "exclusionary clauses are construed even more strictly against the insurer than coverage clauses." *Anderson*, 756 So. 2d at 34; *see also Demshar v. AAACon Auto Transport, Inc.*, 337 So. 2d 963, 965 (Fla. 1976) ("Exclusionary clauses in liability insurance policies are always strictly construed."). **Thus, the insurer is held responsible for clearly setting forth what damages are excluded from coverage under the terms of the policy**. (Emphasis added.)

FORD, DEAN & MALLARD, P.A.
TWO DATRAN CENTER, PENTHOUSE I-C · 9130 SOUTH DADELAND BOULEVARD · MIAMI, FLORIDA 33156 · TELEPHONE (305) 670-2000 · TOLL FREE (888) 372-2873

There is no definition in the Markel policy that defines or even limits "illegal acts." There is no reason for a layperson to suspect that a marine policy would provide any less coverage than an auto policy. In fact, the language in the Markel policy is so vague and ambiguous that it leaves the definition of "illegal" to be determined by the insurance company rather than the courts.

It would have been a simple matter for Markel to state that coverage will not apply to any accidents in which the insured is legally intoxicated. *See* Baker v. Casualty Indemnity Exchange, 561 So. 2d 1314 (4th DCA 1990). Had the meaning and scope of illegal acts been stated more specifically in the exclusion, the Stokys could have made a decision whether they wished to purchase a policy that excluded coverage for boating accidents involving alcohol. They were not given that opportunity, the clause is ambiguous, the coverage illusory and the exclusion void as against Florida's public policy.

In Mercury Insurance Company of Florida v. Coatney, 910 So. 2d 925 (1st DCA 2005), the appellate court declared that in an automobile policy an exclusion for losses caused while the insured was committing or attempting to commit a felony was void and against public policy citing Allstate Indemnity Company v. Wise, 818 So. 2d 524 (2nd DCA 2001). In Wise, the policy contained a clause excluding liability coverage for "bodily injury which may reasonably be expected to result from the intentional or criminal acts of an insured." Factually the insured was intentionally fleeing from a state trooper when she ran a stop sign hitting one car then continued her flight until she hit a truck. Fleeing a police officer is clearly a criminal act but Allstate's argument was rejected. Again this was an auto not a boat policy but the public policy argument

-8-

is the same whether the motor vehicle or vessel is being operated on Florida's highways or waterways. The Wise Court stated at page 256 as follows:

> "An insurance policy procured to comply with the Financial Responsibility Law is an insurance policy for the benefit of the public using the highways of the State. Therefore it may not contain exclusions which destroy the effectiveness of the policy as to any substantial segment of the public. Makris v. State Farm Mut. Auto Ins. Co., 267 So. 2d 105, 108 (3rd DCA 1972)"

The Wise Court went on to approve the rationale in Sledge v. Continental Casualty Co., 639 So. 2d 805, 812 (LA CT App. 1994) which held that an automobile policy coverage exclusion for injury or damage arising out of an "act committed in violation of a law or ordinance" (sounds a lot like "illegal") could be applied only to acts in violation of criminal law and that normally require specific or general intent and added:

> The court observed that a literal application of the policy language "would effectively deny coverage for all acts incidentally and technically constituting an infraction of the statutory 'rules of the road'..." Id. Noting that "a policyholder would normally not expect the instant exclusion to control in reference to speeding, running a stop sign, or failing to maintain control," the court declared that the expansive language of the coverage exclusion clearly conflicted with Louisiana's public policy that automobile liability insurance should protect innocent accident victims. Id.

This is exactly the same situation in the case at Bar, only we have a boater's policy. The enforcement of such an expansive "illegal act" exclusion would contravine the public policy behind the State's Financial Responsibility Laws. When exclusions completely contradict insuring provisions (i.e., when negligence results in a boating accident in violation of Fla. Statute §327), insurance coverage becomes illusory. In Purrelli v. State Farm, 698 So. 2d 618 (2nd DCA 1997), the court stated:

-9-

[1] We conclude the trial court erred by granting Sate Farm's motion for a judgment on the pleadings because State Farm's personal umbrella liability policy is ambiguous. The policy purports to insure invasion of privacy, an intentional tort, but excludes acts "intended" by the insured and limits coverage to "accidents." If an insurance policy is ambiguous, the ambiguity must be resolved liberally in favor of the insured. *See Prudential Property & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 472 (Fla. 1993). Florida case law does not allow insurers to "use obscure terms to defeat the purpose for which the policy is purchased." *Weldon v. All American Life Ins. Co.*, 605 So. 2d 911, 915 (Fla. 2d DCA 1992). Any ambiguities in an insurance contract must be construed liberally in favor of the insured and strictly against the insurer who prepared the policy. *See Swindal*, 622 So. 2d at 472; *Florida Farm Bureau Ins. Co. v. Birge*, 659 So. 2d 310, 311 (Fla. 2d DCA1994), *review denied*, 659 So. 2d at 311; *Triano v. State Farm Mut. Auto. Ins. Co.*, 565 So. 2d 748, 749 (Fla. 3d DCA 1990).

We have not found, nor have the parties cited, any controlling Florida authority addressing the exact issue before this court. Of the Florida cases involving personal umbrella liability policies which provide explicit coverage for specified intentional torts, none was decided based on a contractual exclusion for intentional conduct. *See Ladas v. Aetna Ins. Co.* 416 So. 2d 21, 22-23 (Fla. 3d DCA 1982); *Continental Cas. Co. v. Schaubel*, 380 So. 2d 483 (Fla. 3d DCA 1980); *Federal Ins. Co. v. Applestein*, 377 So. 2d 229 (Fla. 3d DCA 1979). Courts in other jurisdictions have considered personal umbrella liability policies that provide coverage for specified intentional torts but exclude coverage for intentional acts, and found the exclusions to be ambiguous.

The Maryland Court of Appeals held that conflicting provisions in a personal umbrella liability policy similar to Purrellis's could not be reconciled because the limitation and the exclusion completely swallowed up the insuring provision, creating "the grossest form of ambiguity." *Bailer v. Erie Ins. Exchange*, 344 Md. 515, 687 A.2d 1375, 1380 (1997) (finding coverage for a claim of invasion of privacy). When limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory. *See Lineberry v. State Farm Fire & Cas. Co.*, 885 F.Supp. 1095, 1099 (M.D.Tenn.1995) (finding a personal umbrella liability policy similar to Purrelli's to be ambiguous and finding coverage for an

-10-

**FORD, DEAN & MALLARD,** P.A.

> invasion of privacy claim). As one court observed, an insurance policy that provides coverage for specifically enumerated intentional torts, but only if they are committed unintentionally, is "complete nonsense." *Lincoln Nat'l Health & Cas. Ins. Co. v. Brown*, 782 F.Supp. 110, 112-13 (M.D.Ga.1992).

Just like the policy language in Purrelli created an illusory insurance agreement, the instant policy language and illegal acts exclusion in the Markel policy have also created an illusory insurance policy that in effect provides no coverage at all for any boating accident caused by the Stoky's negligence. Florida Statute §327.33 requires "any person operating a vessel upon the waters of this state [to] operate the vessel in a reasonably prudent manner....". Violation of this section results in a first degree misdemeanor if the operation of the vessel was reckless and a second degree misdemeanor even if the operation of the vessel was not reckless but did violate a rule of navigation.

Obviously, violation of Florida Statute §327.33 would be an "illegal act" and void coverage under the exclusion in the Markel policy even if there was no ticket issued and no conviction. There are almost no circumstances where a boating accident could occur that was caused by any negligence on the part of the Stokys that would not be a violation of Florida Statute §327.33 and, thus, Markel could at there own discretion refuse to pay for any loss due to the negligence of the Stokys. Some examples of the activities by the Stokys that would void coverage if this policy exclusion was enforced and an accident occured include: going to fast for sea conditions, going faster than idle speed in a no wake or manatee zone, traveling outside the markers for a channel, and failing to yield the right of way to another vessel. The scenarios that would void coverage are limitless and enforcement of the exclusion would create an illusory contract of insurance. As stated above in Purrelli, enforcement of a policy exclusion that

-11-
**FORD, DEAN & MALLARD, P.A.**
TWO DATRAN CENTER, PENTHOUSE I-C · 9130 SOUTH DADELAND BOULEVARD · MIAMI, FLORIDA 33156 · TELEPHONE (305) 670-2000 · TOLL FREE (888) 372-2873

"swallows" up the insurance provision of the contract is "the grossest form of ambiguity." As such, the exclusion in this case cannot be enforced.

In P & H Vehicle Rental & Leasing Corp. v. Garner, 416 So. 2d 503 (5th DCA 1982), the court struck down an exclusionary clause in a car rental agreement which stated that the leasor was not liable if the leasee drove while intoxicated holding that such an exclusion was void as against public policy.

It is understandable that an insurance company may want to exclude coverage for intentional criminal acts but Florida's Supreme Court displayed its disapproval of such clauses in Prudential Property and Casualty Ins. Co. v. Swindel, 622 So. 2d 467 (Fla. 1993) by holding that intentional injury exclusions do not void coverage for bodily injuries sustained where, although the insured committed an intentional (illegal?) act, intending to cause fear, actual bodily injuries were caused accidentally and were not expected or intended by the insured to result. The facts of the Swindal case provide coverage in a situation for more "illegal" than the Stoky's accident. In Swindal, Prudential's insured took his gun, chased Swindal in his car, caught up with Swindal, and approached Swindal's car with his loaded handgun, safety off, finger on the trigger. A struggle for the gun ensued and Swindal was shot. Prudential's insured maintained that the gun discharged accidentally and he never "intended" to shoot Swindal. The fact that Florida's Supreme Court provided coverage on these facts sends a clear message on Florida's public policy.

FORD, DEAN & MALLARD, P.A.
TWO DATRAN CENTER, PENTHOUSE 1-C · 9130 SOUTH DADELAND BOULEVARD · MIAMI, FLORIDA 33156 · TELEPHONE (305) 670-2000 · TOLL FREE (888) 372-2873

CASE NO.: 05-CV-10070/MOORE/GARBER

## CONCLUSION

The exclusionary clause before the Court is ambiguous, renders the insurance contract illusory and is against Florida's well defined public policy and mut be declared invalid and ineffective to provide the Stoky's coverage.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by mail this 12th day of April 2006 to Steven E. Goldman, Esq., Goldman & Hellman, 315 SE 7th Street, Suite 200, Ft. Lauderdale, Florida 33301 and Jay Levy, Esq., 9130 South Dadeland Blvd., Suite 1510, Miami, FL 33156.

Respectfully submitted,

FORD, DEAN & MALLARD, P.A.
Attorneys for Defendant
Two Datran Center, PH 1-C
9130 South Dadeland Boulevard
Miami, Florida 33156
Tel: (305) 670-2000
Fax: (305) 670-1353

_____
T. PATRICK FORD
Florida Bar No.: 136984

-13-

**FORD, DEAN & MALLARD, P.A.**
TWO DATRAN CENTER, PENTHOUSE 1-C • 9130 SOUTH DADELAND BOULEVARD • MIAMI, FLORIDA 33156 • TELEPHONE (305) 670-2000 • TOLL FREE (888) 372-2873

CASE NO.: 05-CV-10070/MOORE/GARBER

**SERVICE LIST**

Steven E. Goldman, Esq.
Goldman & Hellman
Attorneys for Plaintiff
315 S.E. 7th Street, Suite 200
Ft. Lauderdale, FL 33301
(954) 356-0460
(954) 832-0878 Fax
(617) 566-4200 Boston
Counsel for Plaintiff, Markel American Insurance Company

Jay M. Levy, Esq.
9130 South Dadeland Blvd.
Suite 1510
Miami, FL 33156
(305) 670-8100
(305) 670-4827 Fax
Counsel for Defendant, Marlena Avery

T. Patrick Ford, Esq.
Ford, Dean & Mallard, P.A.
Two Datran Center, Penthouse 1-C
9130 South Dadeland Boulevard
Miami, Florida 33156
(305) 670-2000
(305) 670-1353 Fax
Counsel for Defendants, Robert and Ruth Stoky and Scott Stoky