FILED by ELECTRONIC
May 8 2006
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI
D.C.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN ADMIRALTY

MARKEL AMERICAN
INSURANCE COMPANY,

      Plaintiff

vs.

ROBERT STOKY, RUTH STOKY,
SCOTT STOKY, and MARLENA AVERY,

      Defendants

CASE NO: 05-CV-10070-
MOORE/GARBER

_____

### DEFENDANT MARLENA AVERY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CO-DEFENDANTS STOKYS' MOTION FOR SUMMARY JUDGMENT[1]

Introduction

Markel filed the instant declaratory action under this court's admiralty jurisdiction (Complaint ¶ 3). Markel seeks a declaration that its policy of marine insurance affords no coverage for a single vessel boating accident, involving a vessel owned by Robert and Ruth and operated by Scott at the time of the accident

---

[1] The following symbols and designations will be used in this memorandum. Plaintiff Markel American Insurance Company shall be referred to as "Markel." Defendants Robert Stoky, Ruth Stoky and Scott Stoky shall be collectively referred to as "The Stokys" and shall be individually referred to by their first name. Defendant Marlena Avery shall be referred to as "Avery." The exhibits to Markel's Motion for Summary Judgment shall be referred to by

1

(Complaint ¶30). Avery was a passenger in the vessel at the time of the accident. Markel contends that the "illegal act" exclusion contained within the policy voids coverage under the policy for the accident because Scott operated the vessel while legally intoxicated and as a result was adjudicated guilty of a first degree misdemeanor. Markel has moved for summary judgment contending the "illegal act" exclusion voids coverage for the accident. The Stokys have moved for summary judgment contending the "illegal act" exclusion is ambiguous and renders coverage illusory under the policy. The parties have stipulated to the material facts. For the reasons which follow, the "illegal act" exclusion does not bar coverage for the accident. Avery joins in the Stokys' motion and opposes Markel's motion.[2]

## Undisputed Facts[3]

Robert and Ruth purchased a "Compass Boat Policy" from Markel which insured 20' 999 Backcountry vessel, #BC1PG229H899, which policy was in full force and effect for the time period June 14, 2004 through June 14, 2005. This policy was in full force and effect on the date of the accident in question.

---

the letters "Ex". The letter following "Ex" shall refer to the specific exhibit in which the reference appears.

2   Avery joins in the arguments made by the Stokys in their motion for summary judgment and will do her best to avoid duplication.

3   Both Markel and the Stokys have filed statements of the undisputed facts. The statement of undisputed facts is drawn from each statement.

2

The accident occurred when Scott lost control of the insured vessel and ran the vessel into the mangroves, injuring both Scott and Avery. At the accident scene, Scott had a strong odor of an alcoholic beverage, bloodshot red eyes, mumbled confused speech and appeared to be impaired (Ex B). Scott and Avery were taken from the accident scene to Mariners Hospital in Tavernier, Florida. A blood sample, taken from Scott at Mariners Hospital revealed that Scott had a .197, blood alcohol level (Ex. B). This rendered him legally impaired. §327.35(1)(b), Fla. Stat.

Scott was charged with boating under the influence involving serious bodily injury to another (§327.35(3)(c)(2), Fla. Stat.), a third degree felony, and violation of a navigation rule resulting in an accident (§327.33(3)(a), Fla. Stat.), a second degree misdemeanor (Ex A, ¶13). He pled no contest to a charge of Boating Under the Influence with Personal Injury (§327.35(3)(c)(1)), a first degree misdemeanor (Ex. G).

## Argument

The instant case is an action in admiralty since it involves the interpretation of a maritime insurance policy. Federal courts have long considered actions involving marine insurance policies to be within the admiralty jurisdiction of the federal courts and governed by federal maritime law. *All Underwriters v. Weissberg*, 222 F.3d 1309 (11th Cir. 2000). Admiralty courts will generally look to appropriate state law in determining questions involving a marine insurance contract. *Gulf Tampa Dry Dock*

*Co. v. Great Atlantic Ins.*, 757 F.2d 1172 (11th Cir. 1985). For this reason, this Court should look to Florida state law to govern the interpretation of the Markel policy since Florida has the most significant relationship to the policy in question.[4]

Section III of the Markel policy contains the following exclusion:

> We do not pay for loss or damage caused by the dishonest or *illegal act* of any Insured Person, any person to whom your insured property is entrusted, or their employees or representatives regardless of whether or not such person is convicted of such act by criminal court.

(Emphasis Added).

The term "illegal act" is undefined by the policy.[5] Under Florida law, absent the definition of a term in a policy, the court may utilize the plain and generally accepted meaning of the term. *Guideone Elite Insurance Company v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317 (11th Cir. 2005). The language used in an insurance policy is to be given its popular and usual significance. *Rosen v. Godson*, 422 F.2d 1082 (5th Cir. 1970).[6] In construing terms appearing in insurance policies, Florida courts commonly adopt the plain meaning of words contained in legal and non-legal

---

[4] Both Markel and the Stokys, in their respective memoranda utilize Florida law with regard to the interpretation of the insurance policy at issue.

[5] It should not be overlooked that Markel, as master of the language contained in its policy, could have put in a specific exclusion for criminal acts or for boating while intoxicated if it so chose. This court should not through the guise of contract interpretation, include that which Markel failed to include when it drafted the policy.

[6] Cases decided by the Former Fifth Circuit prior to October 1, 1980 are binding precedent in this circuit. *Bonner v. City of Prtchard*, 661 F.2d 1201 (11th Cir. 1981).
.

4

dictionaries.  *Continental Casualty Company v. Wendt*, 205 F.3d 1258 (11th Cir. 2000); *accord:  Watson v. Prudential Property & Cas. Co.*, 696 So.2d 394 (Fla. 3DCA 1996).  The term "illegal" means "not legal, contrary to existing statutes, regulations, etc." *Webster's New Universal Unabridged Dictionary* (Barnes & Noble 1994), or "not according to authorized by law, unlawful." *Webster's 9th Collegiate Dict.* (1989).  Utilizing the foregoing dictionary definitions, the plain meaning of the term "illegal act," means an act contrary to law.  Thus, if the operation of the boat is violative of a Florida Statute, such operation is an illegal act within the Markel policy.

The operation of a boat either recklessly or carelessly violates §327.33, Fla. Stat., thereby rendering the reckless or *careless* operation of a boat illegal, although only reckless operation is a criminal offense.  This statute states:

> (1) It is unlawful to operate a vessel in a reckless manner.  A person is guilty of reckless operation of a vessel who operates any vessel, or manipulates any water skis, aquaplane, or similar device, in willful or wanton disregard for the safety of persons or property at a speed or in a manner as to endanger, or likely to endanger, life or limb, or damage the property of, or injure any person. Reckless operation of a vessel includes, but is not limited to, a violation of s.327.331(6).  <u>Any person who violates a provision of this subsection commits a misdemeanor of the first degree</u> punishable as provided in s. 775.082 or s. 775.083.
>
> (2) <u>Any person operating a vessel upon the waters of this state</u>

5

>   shall operate the vessel in a reasonable and prudent manner, having regard for other waterborne traffic, posted speed and wake restrictions, and all other attendant circumstances so as not to endanger the life, limb, or property of any person. However, vessel wake and shoreline wash resulting from the reasonable and prudent operation of a vessel shall, absent negligence, not constitute damage or endangerment to property. <u>Any person who violates the provisions of this subsection commits a noncriminal violation as defined in s. 775.08.</u>
>
>   (3)   Each person operating a vessel upon the waters of this tate shall comply with the navigation rules.
>       (a)   <u>A person whose violation of the navigation rules results in a boating accident, but whose violation did not constitute reckless operation of a vessel is guilty of a misdemeanor of the second degree</u>, punishable as provided in s. 775.082 or s. 775.083.
>       (b)   A person whose violation of the navigation rules does not result in a boating accident and does not constitute reckless operation of a vessel is guilty of a non-criminal violation as defined in s.775.08.
>       (c)   Law enforcement vessels may deviate from the navigational rules when such diversion is necessary to the performance of their duties and when such deviation may be safely accomplished.
>
>                          (Emphasis Added)

Subsection 2 of this statute applies the negligent operation of a boat and makes such operation a civil infraction. Thus the statute proscribes both reckless and negligent all aspects of the operation of a boat.

The coverage section of the policy, Section V entitled "Liability Coverage" provides the Stokys with the following coverage:

6

> We will pay damages for <u>bodily injury or property damage for which You become liable</u> through ownership, maintenance, or use of the Insured Property. This includes liability for property damage to another vessel.

(Emphasis Added)

The only way Scott could be liable is through the application of fault concepts which require either careless or reckless conduct on his part.[7] As noted above, this is the very same conduct which is entirely excluded by the "illegal act" exclusion. In other words, the coverage afforded by the policy for bodily injury or property damages is entirely eliminated by the "illegal act" exclusion.

Under Florida law, when limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory. *Purrelli v. State Farm Fire and Casualty Company*, 698 So.2d 618 (Fla. 2DCA 1997); *Northland Casualty Company v. HBE Corporation*, 160 F.Supp.2d 1348 (M.D.Fla. 2001). In *Purrelli* the issue was whether an umbrella liability policy provided coverage for an invasion of privacy claim. That policy provided coverage for certain specified torts including invasion of privacy but excluded coverage for intended acts. In invalidating the exclusion, the court held:

---

7  Avery's position is buttressed by §327.33(3)(a), Fla. Stat. which makes a violation of a navigational rule a second degree misdemeanor. This subsection makes the negligent operation of a vessel a crime where the operation violates a navigation rule which results in a boating accident.

> Florida courts have recognized invasion of privacy to be an intended tort. *See Chase Manhattan Inv. Servs., Inc. v. Miranda*, 658 So.2d 181, 182 (Fla. 3DCA 1995)….Because invasion of privacy can only be actionable if done intentionally, State Farm's insurance contract proving coverage for invasion of privacy is, at best, unclear and ambiguous….
>
> Purrelli's umbrella liability policy with State Farm is ambiguous because the policy purports to provide coverage for specified intentional torts, including invasion of privacy, but attempts to limit coverage to accidents and exclude intentional acts.

*Id.* at 620, 621.

The Court determined the policy, at best, to be unclear and ambiguous since "an accident is by definition unintentional, an insurance contract that explicitly covers the intentional tort of invasion of privacy but limits coverage to "accidents" is ambigous. *Id.*

With regard to the proper interpretation of an exclusionary clause in an insurance policy, in *State Farm Mutual Automobile Insurance Company v. Pridgen*, 498 So.2d 1245, 1248 (Fla. 1986), the Florida Supreme Court held:

> Exclusionary provisions which are ambiguous or susceptible to more than one meaning must be construed in favor of the insured since it is the insurer who usually drafts the contract.

*See also: Taurus Holdings, Inc. v. United States Fidelity & Guaranty Company,* 913

8

So.2d 528 (Fla. 2005); *Continental Insurance Company v. Roberts*, 410 F.3d 1331 (11th Cir. 2005). As the Eleventh Circuit held in *Michigan Millers Mutual Insurance Corporation v. Benfield*, 140 F.3d 915, 925 (11th Cir. 1998), a case decided under Florida law:

> [A]mbiguities in exclusionary provisions must be construed in favor of the insured usually drafts the policy. [Citations Omitted]. "Florida law requires that we resolve a conflict between the provisions of an insurance contract so as to afford maximum coverage to the policyholder. This principle applies with even grater force when the draftsman of a form relies on *inconspicuous* language to defeat the very purpose for which the policy was procured." [Citations Omitted].

*See also: Braley v. American Home Assurance Company*, 354 So.2d 904 (Fla. 2DCA), *cert. den.*, 359 So.2d 1210 (Fla. 1978); *Weldon v. All American Life Insurance Company*, 605 So.2d 911 (Fla. 2DCA 1992). Under these circumstances, construing the exclusion in favor of the Stokys as the insureds, the exclusion should apply only to willful or reckless type conduct which would exclude a conviction for boating under the influence causing damage to the person. This conclusion is drawn, by analogy, from those cases which indicate that the exclusion of coverage for driving a vehicle while intoxicated violates public policy. *T.H.E. Insurance Co. v. Dollar Rent-A-Car Systems, Inc.*, 900 So.2d 694 (Fla. 5DCA 2000); *P&H Vehicle Rental and Leasing*

*Corp.. v. Garner*, 416 So.2d 503 (Fla. 5DCA 1982).[8] There is no logical reason why the operation of a boat should be treated differently from the operation of a vehicle. Consequently, in interpreting the Markel policy, this court should not interpret the operation of a boat while under the influence to be excluded since such an exclusion is void as against public policy.

Reducing *Purrelli* to its lowest common denominator, a policy cannot provide coverage on one hand and take the coverage away with the other.[9] *Compare: Purelli, supra.* (Exclusion invalid because coverage under policy is illusory where it completely voids the coverage afforded under the policy); *with: Northland Casualty Company v. HBE Corporation, supra.* (Coverage not illusory where it excluded intentional claims and certain <u>but not all</u> claims of unintentional discrimination). Since the illegal act exclusion in the Markel policy voids the entirety of liability coverage afforded by the policy, the exclusion is invalid because it renders the liability coverage illusory.[10]

---

8   Also germane is the principle that one who is so heavily intoxicated as to be incapable of formulating the requisite intent may avoid application of a clause in an insurance policy barring coverage for injury occurring during the commission of a crime. *Williams v. New England Mut. Life Ins. Co.,* 419 So.2d 766 (Fla. 1DCA 1982).

9   *Purrelli* is not alone in reaching this conclusion. *See: Lineberry v. State Farm Fire & Cas. Co.,* 885 F.Supp. 1095, 1099 (M.D.Tenn. 1995); *Mo. Intergovernmental Risk Magnt. Ass'n v. Gallagher Bassett Services Inc.*, 854 S.W.2d 565 (Mo.App. 1993).

10   Markel's analysis is not only grossly simplistic but entirely fails to consider the effect of the illegal act exclusion upon the liability coverage afforded under its policy. Markel's position is that Scott was intoxicated when he operated the boat, operating a boat while intoxicated is illegal under Florida law, and therefore the exclusion is applicable. This position does not take into account that the exclusion completely voids coverage.

The California Supreme Court considered an "illegal act" exclusion, similar to the one in the Markel policy, in *Safeco Insurance Company of America v. Robert S.*, 26 Cal. 4th 758, 110 Cal.Rptr.2d 844, 28 P.3d 889 (2001), a case involving a homeowner's policy. There a 16 year old believing a .22 calliber Beretta to be unloaded, pulled the trigger killing his friend. The minor was found guilty of involuntary manslaughter. Safeco denied coverage because the policy excluded coverage for an "illegal act." As the California Supreme Court noted:

> Relevant here are these policy provisions: Safeco agreed to defend and indemnify the insureds in the event of claims brought against any insured for bodily injury caused by "an occurrence," which the policy defined as an accident resulting in bodily injury during the policy period. Excluded from coverage coverage was liability for bodily injury "arising out of any *illegal act* committed by or at the direction of an insured." (Italics Added.) The policy did not define the term "illegal act."

26 Cal.4th at 762, 110 Cal.Rptr. at 848, 28 P.2d at 893.

The court found the phrase "illegal act" susceptible of two meanings, any act prohibited by law, or any criminal act. Noting that if Safeco wanted to exclude criminal acts from coverage, it could have inserted an exclusion for criminal acts, the California Supreme Court concluded it would not read into the policy what Safeco had omitted:

> We now consider the Court of Appeal's construction of the term "illegal" as meaning violation of *any* law, whether

11

civil or criminal. (See, e.g., Webster's 9th New Collegiate Dict. (1989) p. 599 ["not according to or authorized by law; unlawful"]; Webster's New World Dict. (2d college ed. 1982), p. 699 ["prohibited by law, against the law; unlawful; illicit; also, not authorized or sanctioned, as by the rules"]; Black's Law Dict. (5th Ed. 1979) p. 673, Col. 2 ["'Law' includes constitutional, statutory, and decisional law"].) <u>That construction, however, is so broad as to render the policy's liability coverage practically meaningless.</u>

For instance, a violation of "any law" would include the law governing negligence, which holds individuals responsible for the failure to exercise ordinary care resulting in injury to another. (Civ.Code, § 1714 ["Every one is responsible .. for an injury occasioned to another by his want of ordinary care or skill…."].) The duty to exercise ordinary care is imposed by law. (See *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188-1189, 91 Cal.Rptr.2d 35, 989 P.2d 121.) A violation of that duty is therefore *a violation of law*. Broadly construed, a violation of *any law*, whether civil or criminal, is an illegal act. <u>An insured's negligent act, being a violation of law and therefore *an illegal act*, would thus not be covered under Safeco's policy excluding coverage for an insured's illegal acts.</u>

But the homeowners policy that the insureds have bought from Safeco expressly provided that Safeco would defend and indemnify them for bodily injury caused by "an occurrence," which the policy defines as "an accident …, which results, during the policy period, in bodily injury or property damage." Because the term "accident" is more comprehensive than the term "negligence" and thus includes negligence (Black's Law Dict., *supra*, at p. 14, col. 2), <u>Safeco's homeowners policy promised coverage for liability resulting from the insured's negligent acts. That promise would be rendered illusory if, as discussed above, we were to construe the phrase "illegal act," as contained in</u>

12

<u>the policy's exclusionary clause, to mean violation of any law, whether criminal or civil.</u>

26 Cal.4th at 764-765, 110 Cal.Rptr. at 850, 28 P.2d at 894.

(Emphasis Added)

The court rejected the illegal act exclusion as invalid. The analysis applied by the California Supreme Court in *Safeco* is equally applicable to the case at bar. The illegal act exclusion contained in the Markel policy should be held invalid by this court.

In support of its argument, Markel relies upon *Littlefield v. Acadia Insurance Company*, 392 F.3d 1 (1st Cir. 2004), a case decided under New Hampshire law. *Littlefield* was concerned with the following exclusions:

> Acadia asserted that it had no such obligation under two separate provision of the yacht policy, the first contained in Section B of the policy, which governs "Protection and Indemnity Insurance," and the second contained in Section G, which sets forth "General conditions" applicable to the entire policy. The provision in Section B excludes from coverage "any loss, damage or liability willfully, intentionally or criminally caused or incurred by an insured person." The provision in Section G excludes coverage for "any loss, damage or expenses arising out of or during any illegal activity on your part or on the part of anyone using the insured's property with your permission."

*Id.* at 4.

*Littlefield* would have some relevance to this case if the First Circuit had grounded its

13

decision on the exclusion relating to "illegal activity."  However, the opinion is based on the "criminal act" exclusion.  For this reason, the decision is clearly distinguishable.

Littlefield was found guilty by a jury of a Class B felony.  The First Circuit determined that the *criminal* act exclusion was not ambiguous.  It then concluded:

> The exclusion provision thus unambiguously excludes coverage for liability incurred by an insured person, such as Littlefield, through the commission of a crime for which he has been convicted-here, a felony-without regard to the requisite mental state of the crime.  A reasonable layperson "in the position of the insured based on more than a casual reading of the policy as a whole," *Brouillard*, 693 A.2d at 66 (internal quotation marks and citation omitted), would understand that proposition.  Because we can conceive of no other reasonable interpretation of the provision at issue, we find no ambiguity in the policy provision that warrants its being "construed against the insurer." *Fed. Bake Shop*, 736 A.2d at 460.
>
> Here, Littlefield was convicted of a crime; he thus "come[s] directly within the purview" of the exclusion for "criminally caused" loss or liability.  *Juniel*, 931 P.2d at 514.

*Id.* at 8-9

*Littlefield* is inapposite to and does not control the case at bar.  First, the decision is bottomed upon a criminal act exclusion and not an illegal act exclusion.[11]  Second, the court's analysis of the "illegal act" exclusion is dependent on its determination that

14

the "careless and negligent" operation of a power boat is a misdemeanor under New Hampshire law. *Id.* at 11.  However, under Florida law, the careless operation of a boat is not a criminal act but a *civil* infraction.  §327.33(2), Fla. Stat.  Third, the First Circuit rejected Littlefield's reliance on Louisiana law which required that a "criminally caused injury must be at least intentional or willful in order to be excluded from coverage." *Id.* at 10.  Florida has expressly approved Lousiana law in this regard. *Allstate Indemnity Company v. Wise*, 818 So.2d 524 (Fla. 2DCA 2001), *relying on: Sledge v. Continental Casualty Co.,* 639 So.2d 805, 812 (La.Ct.App. 1994). For all of the foregoing reasons, *Littlefield* is inapposite to the case at bar.

Markel fares no better with its reliance upon *Hrynkiw v. Allstate Floridian Insurance Company*, 844 So.2d 739 (5DCA 2003).  There the plaintiff alleged in his complaint that the insured willfully and intentionally committed a battery when he pointed a pistol at the plaintiff's head and fired at close range. *Id.* at 741.  At issue was the intentional or criminal act exclusion and the joint obligations clause.  As *Hrynkiw* did not concern an "illegal act" exclusion, it has no application to the case at bar.

## Conclusion

Based upon the foregoing cases and argument, Defendant MARLENA AVERY

---

11   To the extent that the court in *Littlefield* discusses the "illegal act" exclusion, it is obiter dicta.

15

respectfully requests that this court determine that the illegal acts clause voids the liability coverage of the policy, thereby rendering the policy illusory, and invalidate that exclusion.  Consequently summary judgment should be entered for all defendants and this court should determine that coverage is present under the Markel policy for the accident in question.

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument was mailed to Steven E. Goldman, Esquire, GOLDMAN & HELLMAN, 315 SE 7th Street, Suite 200, Ft. Lauderdale, Florida, 33301, and hand delivered to T. Patrick Ford, Esquire, FORD, DEAN, & MALLARD, P.A., Two Datran Center, PH 1-C, 9130 South Dadeland Boulevard, Miami, Florida, 33156, this 8th day of May, 2006.

> JAY M. LEVY, P.A.
> 9130 South Dadeland Boulevard
> Two Datran Center, Suite 1510
> Miami, Florida  33156
> Telephone No:  (305) 670-8100
> Facsimile No:   (305) 670-4827
>
> BY:.../s/Jay M. Levy……………….
>       JAY M. LEVY, ESQUIRE
>       FLORIDA BAR #: 219754